IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LAURA ROEDER, *et al.*,      :
                              :
    Plaintiffs,           :
                              :  Case No. C2:04-CV-292
    v.                    :
                              :  JUDGE ALGENON L. MARBLEY
OHIO DEPARTMENT OF            :
REHABILITATION AND            :  Magistrate Mark R. Abel
CORRECTION, *et al.*,         :
                              :
    Defendants.           :

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on Defendants' motion for summary judgment. On August 29, 2005, Defendants, the Ohio Department of Rehabilitation ("ODRC"), Reginald Wilkinson, and Norman Rose, filed a Motion for Summary Judgment on Qualified Immunity.[1] For the reasons set forth herein, Defendants' Motion for Summary Judgment is **GRANTED**.

### II. BACKGROUND

#### A. Facts

Plaintiffs, Steve Roeder ("Mr. Roeder") and Laura Roeder ("Ms. Roeder"), are both corrections officers at Defendant Richland Correctional Institution ("RiCI"), which is operated by Defendant ODRC, an agency of the State of Ohio. Mr. Roeder began his employment on October 26, 1998, and Ms. Roeder began her employment on February 2, 1999.

#### 1. Plaintiffs' Injuries

---

[1] In addition to arguing qualified immunity, Defendants' Motion for Summary Judgment challenges the merits to Plaintiffs' federal claims.

On or about April 1, 2001, Plaintiffs were injured when they attempted to break up a fight between two inmates.[2] As a result of the injuries Plaintiffs sustained when they broke up the fight, both received Occupational Injury Leave ("OIL"), a form of paid leave administered through the Ohio Department of Administrative Services, as well as Crime Victims Benefits. When they exhausted those benefits, Plaintiffs filed for, and received, temporary total disability ("TTD") compensation through the Ohio Bureau of Workers' Compensation (the "BWC"), pursuant to Ohio Revised Code § 4123.56. Ms. Roeder received TTD compensation until May 1, 2005. Mr. Roeder received TTD compensation until April 30, 2003, when the BWC found him to have reached "maximum medical improvement."[3] After April 30, 2003, Mr. Roeder received partial disability compensation through the BWC, pursuant to Ohio Revised Code § 4123.57.

### 2. Ms. Roeder's First Involuntary Disability Separation (IDS)

On February 8, 2002, Larry Rawls ("Rawls"), a personnel officer at RiCI, mailed Ms. Roeder a written notice for her to attend a February 15, 2002 meeting to discuss her employment status.[4] On February 15, 2002, Ms. Roeder attended the meeting with Rawls, but she did not

---

[2]Defendants allege that the date of Plaintiffs' injuries was April 2, 2001.

[3]"Maximum medical improvement" is a disqualifying condition under O.R.C. § 4123.56(A).

[4]Defendants contend that the written notice they mailed to Ms. Roeder explicitly stated that "the purpose of the hearing is to determine whether disability separation from employment is warranted." Defendants further state that the notice informed her that she "will have the opportunity to provide any medical or other documentation pertaining to the extent of [her] disability/injury and potential of resuming the essential job functions of [her] position."
In Plaintiffs' Memorandum Contra, Ms. Roeder argues that she telephoned Rawls on the day she received the notice for meeting on February 15, 2002, and Rawls advised her that she did not need to bring any medical evidence to the meeting. Ms. Roeder alleges that Rawls explained over the telephone that the purpose of the meeting was simply to explain to her the procedures relevant to implementing an IDS.

present to him any medical documentation that suggested she was able to perform the functions of her job.  Following his meeting with Ms. Roeder, Rawls met with Defendant Norman Rose, the Warden of RiCI, and Defendant Rose told Rawls to begin implementing an IDS for Ms. Roeder.[5]  On June 19, 2002, Ms. Roeder received a letter in the mail from Defendant Rose, advising her that Defendant ODRC had placed her on IDS.  Defendant ODRC processed a personnel action form reflecting June 18, 2002 as the effective date of Ms. Roeder's IDS.

### 3.  Mr. Roeder's First IDS

On April 22, 2002, Rawls mailed Mr. Roeder a written notice for him to attend a meeting on April 26, 2002.  Mr. Roeder did not attend that meeting, so Rawls mailed a second notice and scheduled another meeting for May 10, 2002.  Again, Mr. Roeder did not appear for the meeting, but a union steward attended in his absence.  On May 13, Defendant Rose mailed a letter to Mr. Roeder, informing him that Defendant ODRC had placed him on IDS.  Defendant ODRC processed a  personnel action form reflecting April 15, 2002 as the effective date of Mr. Roeder's IDS.

### 4.  Plaintiffs' Appeals of Their First IDSs

In November 2002, Plaintiffs appealed their respective IDSs to the State Personnel Board of Review (the "SPBR"), which found Plaintiffs' appeals untimely.  Plaintiffs then appealed the SPBR decision to the Franklin County Court of Common Pleas, which reversed the SPBR after it found that Plaintiffs' time to appeal to the SPBR did not begin to run until ODRC had served

---

[5]An IDS is an action whereby the state may temporarily separate a state employee from his or her employment because that employee is incapable of performing the essential job duties of the employee's assigned position due to a disabling illness, injury, or condition.  *See* O.A.C. § 123:1-33-02.

Plaintiffs with valid orders under Ohio Revised Code § 124.34 ("124.34 Order").[6] In each of Plaintiffs' cases before the court of common pleas, a judge ruled that Defendant ODRC had not issued a valid 124.34 Order indicating an IDS, so the court remanded both cases back to the SPBR.[7] On remand, the SPBR disaffirmed each Plaintiffs' IDS.

### 5. Plaintiffs' Second IDSs

Meanwhile, in March 2003, after Defendant ODRC realized that it had not issued a valid 123.34 Order to Mr. Roeder or Ms. Roeder, it began to process a second IDS for each of them, pursuant to the appropriate statutory procedure. Defendant ODRC served each Plaintiff with a 124.34 Order re-effectuating their respective IDSs with a new effective date of March 17, 2003. Defendant ODRC also processed new personnel action forms reflecting the new effective date. At the time Defendant ODRC issued the second IDSs, both Plaintiffs were still receiving TTD compensation through the BWC.

On or about June 13, 2003, Mr. Roeder sent a letter to Defendant ODRC indicating his desire to return to work. In that letter, however, Mr. Roeder did not provide any documentation that supported his contention that he was able to return to work, and his request was denied.[8]

---

[6]In relevant part, section 124.34(B) provides, "In case of a reduction [or a] suspension of more than three working days, . . . the appointing authority shall serve the employee with a copy of the order of reduction . . . [or] suspension, . . . which order shall state the reasons for the action. The order shall be filed with the director of administrative services and state personnel board of review, or the commission, as may be appropriate." O.R.C. § 124.34(B).
  Furthermore, that subsection provides that "[w]ithin ten days following the date on which the order is served, . . . the employee . . . may file an appeal of the order in writing with the state personnel board of review or the commission." *Id*.

[7]*See Laura Roeder v. Ohio Dep't of Rehab. & Corr.*, No. 03CV-6312 (Franklin CP Aug. 23, 2004); *Steve Roeder v. Ohio Dep't of Rehab. & Corr.*, No. 03CV-6311 (Franklin CP Aug. 13, 2004).

[8]Defendant ODRC alleges that it maintains a policy on reinstatement of employees, which provides the following: "An employee may make a written request to the Appointing Authority or designee for reinstatement from a disability separation. That request shall be

On or about January 3, 2005, Mr. Roeder submitted a second request to Defendant ODRC for reinstatement to his position at RiCI, this time, providing medical documentation that he was able to return to work without restrictions.  In response to this second request for reinstatement, Defendant ODRC required Mr. Roeder to submit to an independent medical examination.  After it reviewed the results of such examination, Defendant ODRC reinstated Mr. Roeder on April 17, 2005.

On March 4, 2005, Ms. Roeder requested reinstatement to her position at RiCI, and she provided medical documentation that she was able to return to work without restrictions.  Defendant ODRC required Ms. Roeder to submit to an independent medical examination.  After it reviewed the results of such examination, Defendant ODRC reinstated Ms. Roeder on May 31, 2005.

### B.  Procedural History

On April 16, 2004, Plaintiffs filed a Complaint against Defendant ODRC, Defendant Reginald Wilkinson, the Director of ODRC, in his official and individual capacities, and Defendant Norman Rose, in his official and individual capacities, alleging that they violated 42 U.S.C. § 1983.  Specifically, Plaintiffs allege that Defendants deprived them of their employment without procedural due process by failing to provide each of them with a pre-deprivation hearing before issuing an IDS, and that Defendants retaliated against them by impeding their exercise of free speech and association.  The Complaint seeks declaratory relief, equitable relief in the form of reinstatement with back pay and reimbursement for lost pension and other benefits, compensatory damages, and attorneys' fees.

---

accompanied by substantial, credible medical evidence that the employee is once again capable of performing the essential functions of the position." Defendant indicates that its policy is reinforced by the language set forth in the state administrative regulation, which provides a similar requirement. *See* O.A.C. § 123:1-33-04(A).

On August 29, 2005, Defendants filed a Motion for Summary Judgment, arguing that they are entitled to qualified immunity and challenging the merits of Plaintiffs' claims. Plaintiff filed a Memorandum Contra, and Defendant filed a Reply Memorandum. Accordingly, Defendants' Motion for Summary Judgment is ripe for decision.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). In response, the non-moving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993) (citations omitted).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The Court also must interpret all reasonable inferences in the non-movant's favor. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the non-moving party and must refrain from making credibility determinations or weighing the evidence). The existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; however, there must be evidence from which the jury reasonably could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986);

6

*Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (finding summary judgment appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party").

### IV. ANALYSIS

Plaintiffs bring their claims under 42 U.S.C. § 1983. Section 1983 provides the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Plaintiffs allege that Defendants deprived them of their property rights to employment without adequate notice and a prior hearing, in violation of the procedural due process required by the Fourteenth Amendment to the United States Constitution. Further, Plaintiffs aver that Defendants retaliated against them after they exercised their right of free speech and association protected under the First Amendment to the United States Constitution.

### A. Sovereign Immunity

As a threshold matter, the Court finds that Plaintiffs cannot pursue their 42 U.S.C. § 1983 claims against Defendant ODRC because it is an improper defendant under that statute. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) (holding that "[s]ection 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); *see also Abick v. State of Mich.*, 803 F.2d 874, 876 (6th Cir. 1986) (holding that under the Eleventh Amendment to the United States Constitution, a State and its agency are immune from

an action for damages or injunctive relief in federal court unless the State consents to the suit and therefore waives its immunity). Here, there is no evidence that Defendant ODRC consented to be sued in this section 1983 lawsuit. *See Abick*, 803 F.2d at 876–77 ("Consent must be in the form of an unequivocal indication, and only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction.") (citations omitted). Therefore, all of Plaintiffs' claims against Defendant ODRC must be dismissed.

Likewise, Plaintiffs' claims against Defendant Reginald Wilkinson and Defendant Norman Rose, in their official capacities, are improper. *See Will*, 491 U.S. at 71 (holding that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."). Neither Defendant Wilkinson nor Defendant Rose consented to be sued in this section 1983 lawsuit. *See Abick*, 803 F.2d at 876–77. Therefore, Plaintiffs' claims against Defendants Wilkinson and Rose, in their official capacities, must be dismissed.

Accordingly, Defendants' Motion for Summary Judgment, with respect to Plaintiffs' section 1983 claims against Defendants ODRC, Wilkinson, in his official capacity, and Rose, in his official capacity, are **GRANTED** on sovereign immunity grounds. After the aforementioned claims are dismissed, only Plaintiff's 42 U.S.C. § 1983 claims against Defendants Wilkinson and Rose, in their respective individual capacities (hereafter, "Defendants Wilkinson and Rose"), remain.

### B. Plaintiffs' Procedural Due Process Claims

Plaintiffs' primary claim against Defendants Wilkinson and Rose is that they deprived Plaintiffs of their property rights to employment without prior notice and a hearing, in

violation of the procedural due process required by the Fourteenth Amendment to the United States Constitution. Specifically, Plaintiffs allege that Defendants Wilkinson and Rose did not provide them with pre-disability separation hearings before placing each of them on IDS. According to Plaintiffs, when Defendants Wilkinson and Rose failed to offer Plaintiffs preseparation proceedings pursuant to Ohio Administrative Code § 123:1-33-02,[9] Defendants Wilkinson and Rose violated Plaintiffs' procedural due process rights.[10]

---

[9] Plaintiffs' Memorandum Contra (at page 4) mistakenly cites Ohio Administrative Code § 123:1-33-04, which addresses an employee's right to reinstatement after an IDS has been issued. Section 123:1-33-02(B), the applicable state regulation, provides:

> When an appointing authority has received the results of a medical or psychological examination and initially determines that an employee is incapable of performing the essential job duties of the employee's assigned position due to a disabling illness, injury, or condition, the appointing authority shall institute pre-separation proceedings. Under those proceedings, a hearing shall be scheduled and advance written notice of at least seventy-two hours shall be provided to the employee. If the employee does not waive the right to a hearing, then at that hearing the employee has a right to examine the appointing authority's evidence of disability, to rebut that evidence, and to present testimony and evidence on the employee's own behalf.

O.A.C. § 123:1-33-04.

[10] In their Complaint, Plaintiffs also allege that Defendants wrongfully denied them reinstatement from the IDSs, in violation of Ohio Administrative Code § 123:1-33-04. Section 123:1-33-04, in relevant part, provides the following:

> (A) An employee may make a written request to the appointing authority for reinstatement from a disability separation. The employee's request shall be accompanied by substantial, credible medical evidence that the employee is once again capable of performing the essential portions of the employee's job duties, and shall be made not more than once every three months and no later than three years from the date that the employee was no longer in active work status due to disabling illness, injury, or condition.
>
> (B) When a disability separated employee presents to the appointing authority substantial, credible medical evidence which

9

Defendants respond that Plaintiffs' claims lack merit for two reasons.  First, Defendants submit that they did provide Plaintiffs' adequate notice and an opportunity to be heard before placing them on IDS.  According to Defendants, both Plaintiffs received notice when Rawls mailed to them written letters requesting their attendance for a pre-separation hearing.[11]

---

> states that the employee is once again capable of performing the essential job duties of the employee's assigned position, the appointing authority shall either reinstate the employee or require the employee to submit to a medical or psychological examination in accordance with rule 123:1-33-01 of the Administrative Code.
>
> (C)  The appointing authority shall reinstate the employee after receiving the results of that examination if the appointing authority determines that the employee is once again capable of performing the essential duties of the employee's assigned position.

O.A.C. § 123:1-33-04.  In this case, Defendants appear to have followed the designated regulatory procedure.  When Plaintiffs requested reinstatement in 2005, and provided Defendants with medical documentation that they were able to return to work without restrictions, Defendants sent Plaintiffs to an independent medical examination, and subsequently, Defendants reinstated them both.  *See* Section II.A. of this Opinion, *supra*.  Thus, Plaintiffs' argument that they were wrongfully denied reinstatement from their IDSs fails.

[11]During oral argument on Defendants' Motion for Summary Judgment, Plaintiffs alleged that Ms. Roeder did not receive written notice of her meeting until after she had arrived at that meeting, and that the only notice she received prior to meeting was when Rawls telephoned her to schedule it.  Defendants dispute Plaintiffs' contention that Ms. Roeder was not given advance written notice of her pre-separation hearing.
   The Court finds that there exists no genuine issue of material fact regarding whether Ms. Roeder had received prior written notice of her pre-separation hearing.  In its Memorandum Contra, Plaintiffs explain the relevant facts as follows:

> On February 10, 2002, Mrs. Roeder received a letter from Larry Rawls, advising her that there would be a meeting to discuss her employment status.  On that day, February 10, 2002, she telephoned Larry Rawls, who advised her that there would be no need to bring any medical evidence, that she was not going to be placed on Involuntary Disability Separation, and that he was simply going to explain the process to her.

Pls.' Mem. Contra at 1–2.  The first time Plaintiffs ever alleged that they had not received prior written notice of Ms. Roeder's pre-separation hearing was during oral argument.  Plaintiffs' recent allegation, which contradicts its own previous representation, is insufficient to create a

10

Defendants further contend that Ms. Roeder did not present any evidence on her own behalf during her pre-separation hearing on February 15, 2002, and that Mr. Roeder never appeared for his pre-separation hearing, which was scheduled on May 10, 2002. Second, Defendants argue that Plaintiffs cannot now claim that they were wrongfully deprived of continued employment because when Defendants placed them on IDS, both Plaintiffs were receiving TTD compensation through the BWC. According to Defendants, the BWC's eligibility standard with respect to TTD compensation is the same as the standard for issuing an IDS under the applicable regulatory scheme. Therefore, Defendants maintain that the doctrine of equitable estoppel precludes Plaintiffs from contesting Defendants' decision to place Plaintiffs on IDS.

    1.  Whether Defendants Afforded Plaintiffs Appropriate Procedural Due Process

The Supreme Court has addressed the issue of a civil servant's procedural due process rights with respect to his or her continued employment. *See, e.g., Gilbert v. Homar*, 520 U.S. 924 (1997); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). In *Loudermill*, the Court held that a tenured public employee is entitled to notice and an opportunity to be heard before the government terminates the employee. 470 U.S. at 542–46. In reaching its decision on the issue, the Court balanced three competing interests: (1) the private interests in retaining employment; (2) the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens; and (3) the risk of an erroneous termination. *Id*. at 542–43 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Moreover, the Court noted that "the formality and procedural requisites for the [pre-termination] hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Id*. at 545 (holding that "[i]n general, something less than a full

---

genuine issue of material fact to preclude summary judgment.

11

evidentiary hearing is sufficient prior to adverse administrative action.") (internal citations omitted); *see also Farhat v. Jopke*, 370 F.3d 580, 595–96 (6th Cir. 2004).

In a later case, the Court determined whether a *Loudermill* hearing was required before the government suspended a state university police officer without pay following a filing of drug-related charges against him. *Gilbert v. Homar*, 520 U.S. 924 (1997). In balancing the three factors discussed in *Loudermill*, the Court found that no prior hearing was required because: (1) the employee in question faced only a temporary suspension without pay, not termination; (2) the state has a significant interest in maintaining public confidence in its police force; and (3) the risk of an erroneous suspension was minimal since the police officer had already been criminally charged. *Id*. at 931–34.

In this case, a balancing of the three *Loudermill* factors indicates that Plaintiffs do not have a federal constitutional right to extensive pre-separation hearings. Under the first factor, Plaintiffs' IDSs are similar to the suspension in *Gilbert*; an IDS is merely a temporary separation from employment, and the employee retains reinstatement rights for three years after the employer orders an IDS. *See* O.A.C. § 123:1-33-02(D). Thus, Plaintiffs' private interests are not particularly strong.

Next, the Court turns to Defendants' interest in quickly separating temporarily disabled employees from employment. While Defendants' interest here is stronger than Plaintiffs' private interests, it is not overwhelmingly strong. The Court acknowledges that it is important for prison staff, and particularly corrections officers who work closely with the inmates, to be able to meet the physical demands of their jobs. Similar to the government's position in *Gilbert*, Defendants have an interest in maintaining a staff that is able to handle day-to-day interaction with prison inmates. To the extent Plaintiffs were unable to meet the physical demands of their jobs due to the injuries they sustained, Defendants were justified in exploring the possibility of separating

12

them temporarily from their employment.

Regarding the third factor, the regulatory scheme set out in O.A.C. § 123:1-33-02(D) provides that the employer base an IDS on a report from an independent medical or psychological examiner. Such an examination decreases the risk that the government will make an erroneous IDS decision.

After the Court balances the three *Loudermill* factors, it finds that Plaintiffs are entitled to, at most, only minimal pre-deprivation notice and opportunity to be heard. Defendants' effort to provide notice and a hearing for both Plaintiffs meets this low standard. The evidence indicates that Defendants mailed a written notice to each of the Plaintiffs and scheduled a meeting with each of them to discuss the IDS procedures before Defendants ever placed them on IDS. Notably, Plaintiffs had numerous methods of post-deprivation relief from Defendants' decision to place them on IDS; namely, Plaintiffs had a right to appeal Defendants' decision to the SPBR under Ohio Administrative Code § 123:1-33-02(E),[12] a right to request reinstatement to their positions under Ohio Administrative Code § 123:1-33-04(A),[13] and a right to appeal the

---

[12]Section 123:1-33-02(E) provides that "[a]n employee [subject to IDS] shall have the right to appeal in writing to the personnel board of review within ten days following the date the order is served." O.A.C. § 123:1-33-02(E).

[13]Section 123:1-33-04(A) provides the following:

> (A) An employee may make a written request to the appointing authority for reinstatement from a disability separation. The employee's request shall be accompanied by substantial, credible medical evidence that the employee is once again capable of performing the essential portions of the employee's job duties, and shall be made not more than once every three months and no later than three years from the date that the employee was no longer in active work status due to disabling illness, injury, or condition.

O.A.C. § 123:1-33-04(A).

13

denial of their request for reinstatement to the SPBR under Ohio Administrative Code § 123:1-33-04(I).[14] *See Call v. Watts*, 142 F.3d 432, at *3 (6th Cir. Apr. 2, 1998) ("[P]ostdeprivation remedies made available by the State can satisfy the Due Process Clause. In such cases, the normal predeprivation notice and opportunity to be heard is pretermitted if the state provides a postdeprivation remedy") (quoting *Parratt v. Taylor*, 451 U.S. 527, 538 (1981)). Therefore, Defendants appear to have met their obligation to provide Plaintiffs procedural due process when they decided to place Plaintiffs on IDS.

### 2. Whether Judicial Estoppel Precludes Plaintiffs' Claims

In the Sixth Circuit, "[t]he doctrine of judicial estoppel operates to prevent a party who has successfully maintained a certain position in one proceeding from asserting a contrary position in another proceeding." *Blanton v. Inco Alloys, Int'l, Inc.*, 108 F.3d 104, 108 (6th Cir. 1997) (citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598–99 (6th Cir. 1982)). A district court may apply the doctrine of judicial estoppel at its own discretion. *Id*. In *Blanton*, the Sixth Circuit affirmed a district court decision invoking judicial estoppel to preclude a plaintiff from claiming that he was able to perform the essential functions of his job after he had represented previously, in an approved application for Social Security benefits, that he was unable to perform his position. *Id*.

This Court invokes the doctrine of judicial estoppel to preclude Plaintiffs from contesting Defendants' decision to place them on IDS because, at the time of that decision, Plaintiffs were receiving TTD compensation through the BWC. The eligibility standard to receive TTD compensation is strikingly similar to an appointing authority's standard to issue an IDS under

---

[14]Section 123:1-33-04(I) provides that "[a]n employee refused reinstatement [] shall be notified in writing of the refusal to reinstate and of the right to appeal in writing to the personnel board of review within thirty days of receiving notice of that refusal to reinstate." O.A.C. § 123:1-33-04(I).

14

O.A.C. § 123:1-33-02(C).[15] Following the *Blanton* analysis, this Court finds it duplicitous for Plaintiffs to argue that their injuries prevented them from returning to work for continued TTD compensation purposes, but that Defendants wrongfully deprived them of their right to employment because they were able to perform their essential job duties.[16]

Because Defendants provided adequate notice and an opportunity to be heard, and because the Court invokes the doctrine of judicial estoppel to preclude Plaintiffs from contesting Defendants' decision to place them on IDS, Defendants' Motion for Summary Judgment on Plaintiffs' procedural due process claim is **GRANTED**.

### C. Plaintiffs' Free Speech Claims

Plaintiffs also claim that Defendants Wilkinson and Rose deprived them of procedural due process in retaliation for Plaintiffs' exercise of free speech and association, thereby violating Plaintiffs' rights protected by the First Amendment to the United States Constitution.[17] Ms. Roeder asserted during a deposition that she was subjected to unlawful retaliation "because [she]

---

[15]*See* O.R.C. § 4123.56(A); *see also State ex rel. Ramirez v. Indus. Comm'n of Ohio*, 433 N.E.2d 586, 588–89 (Ohio 1982) (holding that TTD, "as used in R.C. 4123.56[, is] a disability which prevents a worker from returning to his former position of employment); *compare* O.A.C. § 123:1-33-02(C) (providing that an appointing authority shall place an employee on IDS when "the employee is unable to perform his or her essential job duties").

[16]Plaintiffs urge the Court to entertain their procedural due process claims because a state trial court did not elect to invoke judicial estoppel in an unrelated case on similar facts. *See Cordial v. Dep't of Rehab. & Corr.*, Case No. 04CVF09-10177 (April 12, 2005) (Cain, J.). Plaintiffs' argument, however, fails for three reasons. First, the state trial court decision has only limited persuasive authority in this Court. Second, *Cordial* does not address a procedural due process claim based upon federal law. Third, the *Cordial* decision is pending appeal before the state court of appeals, and it could be reversed.

[17]The First Amendment to the United States Constitution, applicable to state governments through the Fourteenth Amendment, mandates against "abridging the freedom of speech . . . ." U.S. CONST. amend. I.

exercised her right to use [Occupational Injury Leave] and Workers' Compensation."[18] Defendants argue that Ms. Roeder cannot prove Defendants violated her First Amendment rights, and therefore, this Court should grant summary judgment to Defendants as to those claims.

A public employee who has been subjected to a government's adverse employment action must prove three elements to prevail on a claim for violation of his or her First Amendment rights: (1) that the plaintiff's speech involved a matter of public concern; (2) that the plaintiff's interest in the particular expression outweighed the government's interest "as an employer, in promoting the efficiency of the public services it performs through its employees"; and (3) that the speech was a substantial or motivating factor in the government's adverse employment action. *Connick v. Myers*, 461 U.S. 138, 146–47 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

In order to prevail at this stage of the case, Ms. Roeder must show that her use Occupational of Injury Leave and Workers' Compensation benefits constitutes a matter of public concern. The Supreme Court, however, has held that an employee's complaints about alleged discriminatory treatment by her employer is not a matter of public concern for First Amendment purposes. *See Connick*, 461 U.S. at 147 (holding that speech that is only of particular interest to the speaker cannot form the basis of a First Amendment retaliation claim); *see also Farmer v. Cleveland Public Power*, 295 F.3d 593, 600–01 (6th Cir. 2002) (holding that an employee's complaint about failure to be promoted is not a matter of public concern). Ms. Roeder's First Amendment retaliation claims are based upon a complaint which is of a purely personal nature

---

[18] It does not appear that Mr. Roeder alleges a violation of his First Amendment rights. Therefore, this Opinion will only address Ms. Roeder's First Amendment claims.

and does not touch on a matter of public concern for First Amendment purposes.

Having failed to provide evidence from which a jury reasonably could find for Ms. Roeder on her First Amendment retaliation claim, this Court cannot permit that claim to survive summary judgment. Therefore, Defendants' Motion for Summary Judgment on Plaintiffs' First Amendment retaliation claims are **GRANTED**.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**.[19] This case is hereby **DISMISSED.**

**IT IS SO ORDERED.**

                                                                              /s/Algenon L. Marbley  
                                                                              **ALGENON L. MARBLEY, JUDGE**  
                                                                              **United States District Court**

**DATE: March 30, 2006**

---

[19] The Court grants summary judgment to Defendants based upon the merits of Plaintiffs' procedural due process and free speech retaliation claims, so this Opinion does not need to address the parties' arguments related to Defendants' asserted qualified immunity defense.